UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, as subrogee of FILA USA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EXPEDITORS INTERNATIONAL OCEAN INC., and EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.,<br><br>Defendant/Third-Party Plaintiffs,<br><br>v.<br><br>MEDITERRANEAN SHIPPING COMPANY, S.A., a foreign corporation<br><br>Third-Party Defendant. | CASE NO. 2:22-cv-00007<br><br>ORDER GRANTING MOTION TO TRANSFER VENUE |

This matter comes before the Court on Defendant and Third-Party Plaintiffs Expeditors International Ocean, Inc., and Expeditors International of Washington, Inc. ("Expeditors")

Motion to Transfer Venue (Dkt. No. 35). Having reviewed the Motion, Plaintiff's Response ("Pl. Response" (Dkt. No. 37)), the Response by Third-Party Defendant Mediterranean Shipping Company ("MSC Response" (Dkt. No. 38)), Expeditor's Reply (Dkt. No. 39), and all supporting material, the Court GRANTS Expeditors Motion and transfers the case to the Southern District of New York.

## BACKGROUND

Expeditors is a Washington corporation that operates as a non-vessel operating common carrier ("NVOCC") as defined by 46 U.S.C. § 40102(17). (Motion to Transfer at 2 ("Motion").) As an NVOCC, Expeditors does not actually operate ocean vessels, but rather facilitates transportation as a documented carrier of record, and books transportation with steamship lines such as Mediterranean Shipping Company, S.A. ("MSC"). (Id.) Fila USA, Inc. ("Fila") engaged Expeditors to arrange ocean transport of its cargo from China to California. (Id.) Expeditors then arranged the transportation of Fila's cargo with MSC. (Id. at 3.) Apparently, while en route to California, the vessel experienced a heavy weather incident which resulted in the loss of several hundred shipping containers overboard, and damage to numerous other containers stowed on deck. (MSC Response at 2.) One of the containers allegedly lost overboard is Fila's cargo that is the subject of the litigation before this Court. (Id.)

Plaintiff Liberty Mutual Insurance Company ("Liberty") insured Fila against the loss of or damage of its cargo. (Motion at 2.) Liberty, as the subrogee of Fila, commenced this action on January 4, 2022, alleging, among other things, that Expeditors breached its contract with Fila by failing to deliver the cargo to California in the same good order and condition in which it was received by Expeditors. (Id. at 3-4.) Liberty filed the claim in the Western District of Washington pursuant to a forum selection clause contained in the Terms and Conditions that are part of the

contract between Expeditors and Fila. (Id. at 4.) Also contained in the Terms and Conditions is a clause that states the merchant, Fila, in this instance, agrees to "the transfer of venue in any or all such actions to any other venue in which Carrier is party to a legal action brought by itself or a third party that arises from or is connected with the good, their carriage, loading, unloading, handling, or storage, or loss, damage, or delay related to any of the goods." (Id.)

Following Liberty's Complaint, Expeditors filed a complaint seeking indemnity against MSC in the Southern District of New York ("SDNY") pursuant to a forum selection clause in MSC's governing shipping documentation. (Id. at 4-5.) Despite filing a complaint in the SDNY, Expeditors moved to file a third-party complaint against MSC in this action, which this Court granted in June 2022. (See Dkt. No. 12.) On August 1, 2022, the SDNY consolidated Expeditors' action with several other claims arising out of the same incident. (Id. at 5.) Expeditors then moved the SDNY to voluntarily dismiss the action pending in that court, which the court denied on October 17, 2022. (Motion at 6.) Expeditors now asks this Court to transfer the case to the Southern District of New York where the duplicative action is pending.

## ANALYSIS

Expeditors move to transfer this action under 28 U.S.C. § 1404. Liberty does not oppose the Motion. (See Pl. Response.) MSC, on the other hand, does oppose the Motion and instead asks the Court to dismiss Expeditors claims rather than transfer the case. (MSC Response at 9.) The Court finds transfer appropriate.

**A.     Legal Standard**

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have

consented." The section's purpose "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Cont'l Grain Co. v. The Barge FBL-585, 364 U.S. 19, 26-27 (1960)).

A valid forum selection clause may be enforced via a motion to transfer brought under Section 1404(a). Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas, 571 U.S. 49, 59 (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Id. at 62. When a valid forum selection clause exists, only "extraordinary circumstances unrelated to the convenience of the parties" justify denying a Section 1404(a) motion. Id.

**B.   Validity of the Forum Selection Clause**

Neither Liberty nor MSC dispute the validity of the forum selection clause or the provision which allows Expeditors to transfer venue to any other venue where Expeditors is party to a legal action. And the Parties do not dispute that the forum selection clause and transfer clause apply to Liberty as Fila's subrogee. When parties have agreed to a forum selection clause, the nonmovant bears the burden of showing why transfer is inappropriate by "clearly show[ing] that enforcement would be unreasonable and unjust." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). Enforcement is unreasonable and unjust if: (1) the clause "was the product of fraud or overreaching"; (2) the nonmovant would "effectively be deprived of his day in court were the clause enforced"; or (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998) (internal citation and quotation omitted).

ORDER GRANTING MOTION TO TRANSFER VENUE - 4

Expeditors' Terms and Conditions are incorporated by reference on its Sea Waybill, stating that the contract is "subject to the standard terms of carriage of the Carrier" and "[a]ll services provided are subject to these terms and conditions," which are available online. (Motion at 3.) Paragraph 17 of the Terms and Conditions states, in relevant part, that the "[c]ustomer also irrevocably consents to the commencement and to the transfer of venue in any action to any other venue in which Expeditors is a party to an action brought by itself or another Person." (Motion at 3; terms and conditions para. 17, www.expeditors.com/forms-downloads.) Enforcement of the forum selection clause does not appear to be unreasonable or unjust, and no argument by Liberty or MSC was made to demonstrate the clause stemmed from fraud or overreaching. Given that neither Liberty or MSC disputes this provision in the terms or conditions or challenges the appropriateness of the forum selection clause, the Court finds that the forum selection clause is valid.

**C.   MSC's Arguments to Dismiss**

Rather than challenge the validity of the forum selection clause, MSC argues that the Court should deny Expeditors' Motion to transfer and instead dismiss its claims against MSC. The Court finds transfer to be a more appropriate course of action than dismissal.

     1.    <u>MSC's Argument to Dismiss Third-Party Complaint</u>

First, MSC argues that rather than transfer Expeditors' claims against MSC, the Court should instead dismiss the Third-Party Complaint as duplicative. Invoking the first-to-file rule, MSC argues that it is within the Court's discretion to stay, transfer, or dismiss cases that are duplicates of those brought previously in other federal courts. While the Court recognizes these options are within its discretion should the first-to-file rule apply, the Court is unwilling to dismiss the case.

1    The first-to-file rule "permits a district court to decline jurisdiction over an action when a
2    complaint involving the same parties and issues has already been filed in another district."
3    Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). In determining
4    whether the first-to-file rule applies, courts analyze three factors: (1) chronology of the lawsuits,
5    (2) similarity of the parties, and (3) similarity of the issues. Kohn Law Group, Inc. v. Auto Parts
6    Mfg. Mississippi, Inc., 787 F.3d 1237, 1240 (9th Cir. 2015). If the rule applies, the district court
7    may transfer, stay, or dismiss an action under these circumstances. Alltrade, Inc. v. Uniweld
8    Prods., Inc, 946 F.2d 622, 623 (9th Cir. 1991). The first-to-file rule is intended to "serve[] the
9    purpose of promoting efficiency well and should not be disregarded lightly." Id. at 625
10   (alteration in original). "When applying the first-to-file rule, courts should be driven to maximize
11   economy, consistency, and comity." Kohn, 787 F.3d at 1240.

12   All three of the factors here support application of the first-to-file rule. Expeditors filed
13   an action against MSC in the Southern District of New York on March 3, 2022. (MSC Response
14   at 6.) In contrast, Expeditors sought leave to file a Third-Party Complaint in this Court on June
15   14, 2022. (Dkt. No. 10.) The parties in both suits are the same, as are the issues. All three factors
16   support the application of the first-to-file rule. The question then presented before the Court is
17   whether to transfer or dismiss the claims, both of which are within the Court's discretion. The
18   Court finds transfer to be the more appropriate option.

19   MSC argues that Expeditors claims against MSC are duplicative and that the SDNY court
20   already considered Expeditors' claims and would have no reason to decide them twice. (MSC
21   Response at 10.) MSC alleges that a comparison of the two pleadings demonstrates that they are
22   virtually identical. (Id.) But Expeditors argues that the complaints are not identical, procedurally
23   or substantively. (Reply at 4.) The Court agrees with Expeditors. Specifically, Expeditors alleges
24

that its action before this Court includes Fed. R. Civ. P. 14(c) allegations, whereas it only seeks indemnity in the SDNY. (Compare Third Party Complaint (Dkt. No. 13) and Declaration of Edward Flood, Exhibit C (Dkt. No. 20).) MSC's motion to dismiss Plaintiff's claims (Dkt. No. 21), which was brought via Expeditors' invocation of Fed. R. Civ. P. 14(c), undermines its arguments that the claims are identical. This weighs in favor of a transfer rather than dismissal.

MSC also raises questions as to Expeditors' conduct regarding the interplay between the SDNY case and this one. There appears to be history between MSC's counsel and Expeditors' counsel, and issues have arisen in the SDNY case with regard to notice, motions for default judgment, and confusion about whether Expeditors' intended to try the case in the SDNY or here. (See MSC Response at 5-8.) MSC cites to the SDNY court's ruling denying Expeditor's motion for voluntary dismissal, which states that "[t]his Court does not believe that this motion is about convenience, but about gamesmanship. . ." (MSC Response at 9.) The concerns only underscore the need to have the claims heard before the same court. And given the issues that have arisen before the SDNY court, the Court finds that SDNY is better positioned to consider all the issues.

    2.    <u>MSC's Argument to Dismiss Liberty's Claims Against MSC</u>

Second, MSC argues that though Expeditors has asserted Liberty's claims against MSC through Fed. R. Civ. P. 14(c), Liberty cannot sue MSC in any district under the Sea Waybill, and therefore the claims against MSC should be dismissed rather than transferred. But MSC is attempting to reargue its Motion to Dismiss Plaintiff's Claims (Dkt. No. 21), which the Court re-noted in consideration with this Motion. As the Court re-noted MSC's motions to dismiss and the motion to transfer to be considered together, with the motion to transfer being considered first, the Court has yet to rule on the motions to dismiss. Both of which would be moot if the Court

ORDER GRANTING MOTION TO TRANSFER VENUE - 7

were to transfer the case. Because the Court is considering the Motion to Transfer first, it finds transfer appropriate.

Section 1404(a) has two requirements: (1) that the transferee district is one where the case "might have been brought" or where all parties consent to transfer; and (2) that the transfer is for the convenience of the parties and witnesses and in the interests of justice. 28 U.S.C. § 1404(a). As previously stated, Expeditors initially filed its claims against MSC in the Southern District of New York. And per the terms and conditions incorporated into the Sea Waybill, Liberty consents to the transfer. Whether that action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) is separate from whether the case could be brought in the SDNY. There is no question that the action could have been brought in the SDNY.

For the second Section 1404(a) requirement, courts conduct an "individualized, case-by-case consideration of convenience and fairness" requiring courts to "weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotation and citation omitted). Courts ordinarily consider private and public interest factors to determine convenience and the interests of justice. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000) (providing a non-exclusive list of eight public and private interest factors).

But when a motion to transfer is based on a valid forum selection clause, the Section 1404(a) analysis changes. Atl. Marine Cons. Co., 571 U.S. at 63. In these instances, courts should not consider arguments concerning the parties' private interests, meaning parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 64. As a result, courts may only

consider arguments about public interest factors stemming from the interest of justice requirement. Id.

Public interest factors include "the administrative difficulties flowing from court congestion [and] the local interest in having localized controversies decided at home." Piper Aircraft Co., v. Reyno, 454 U.S. 235, 241 n.6 (1981). The Court also weighs factors such as "ensuring speeding trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (9th Cir. 1989). The Court finds these latter factors weigh in favor of a transfer.

All of the other cases arising out of loss or damage of cargo from this voyage are consolidated in the SDNY. "Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical, and expeditious pre-trial proceedings and discovery and avoid[s] duplicitous [sic] litigation and inconsistent results." Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (quoting Durham Productions, Inc. v. Sterling Film Portfolio Ltd., Series A, 537 F.Supp. 1241, 1243 (S.D.N.Y 1982). The Court also notes that the District Court Judge presiding over these consolidated cases will be the most familiar with the applicable law, as well as the relevant facts and defenses at issue.

Expeditors argues that the issue of whether it can impart Liberty's claims against it onto MSC is one that is also at issue in the consolidated proceedings in the SDNY. (Reply at 5.) Therefore, if the Court were to rule on this issue, it could interfere with the adjudication of similar issues within the consolidated claims brought by other parties against MSC. The Court agrees with Expeditors. Ruling on this issue could lead to inconsistent results across similar, related claims. Given that the Southern District of New York has consolidated all other claims

arising out of the weather incident that occurred during this voyage, it is the best positioned to dispose of all claims related to it.

## CONCLUSION

The Court finds that the forum selection clause and the transfer clause in Expeditors' Terms and Conditions are valid, and that the first-to-file rule applies in this case. The Court further finds that the claims at issue should be transferred rather than dismissed. The Court GRANTS Expeditors' Motion to Transfer this action to the District Court for the Southern District of New York. This Clerk shall close the file and notify the Clerk of Court in the Southern District of New York.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 11, 2023.

*[signature]*

Marsha J. Pechman
United States Senior District Judge